UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOROTHY LYNN HOLLEY,

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Case # 17-CV-6837-FPG

DECISION AND ORDER

**INTRODUCTION**

Plaintiff Dorothy Lynn Holley brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for the calculation and payment of benefits.

**BACKGROUND**

On September 29, 2014, Holley applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 158-62. She alleged disability since July 1, 2014 due to back and ankle problems, diabetes, and hypothyroidism. Tr. 181. On February 14, 2017, Holley and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Gretchen Mary Greisler ("the ALJ"). Tr. 26-67. On March 21, 2017, the ALJ issued a decision finding that Holley

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

was not disabled within the meaning of the Act. Tr. 14-21. On October 18, 2017, the Appeals Council denied Holley's request for review. Tr. 1-7. Thereafter, Holley commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Holley's claim for benefits under the process described above. At step one, the ALJ found that Holley had not engaged in substantial gainful activity since the application date. Tr. 16. At step two, the ALJ found that Holley has a right ankle impairment, sacroiliitis, and obesity, which constitute severe impairments. Tr. 16-17. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 17.

Next, the ALJ determined that Holley retains the RFC to perform sedentary work[2] with additional limitations. Tr. 17-19. Specifically, the ALJ found that Holley must walk for at least five minutes after sitting for one hour; can frequently handle, finger, and feel; can occasionally stoop and twist but cannot crouch; can occasionally climb ladders, ropes, and scaffolds and frequently climb ramps and stairs; and cannot be exposed to extreme heat or cold. Tr. 17.

At step four, the ALJ indicated that Holley has no past relevant work. Tr. 19. At step five, the ALJ relied on the VE's responses and found that Holley can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-20. Specifically, the VE found that Holley could work as a food and beverage order clerk, addresser, and surveillance system monitor. Tr. 20. Accordingly, the ALJ concluded that Holley was not "disabled" under the Act. Tr. 21

.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

**II.    Analysis**

Holley argues that remand is required because the ALJ violated the treating physician rule. ECF No. 9-1 at 12-20; ECF No. 14. Specifically, Holley asserts that the ALJ did not provide good reasons for discounting the opinion of his treating physician Tony Witte, M.D. *Id.* The Court agrees.

**A.    Treating Physician Rule**

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

5

## B. Dr. Witte's Opinion

On January 6, 2017, Dr. Witte completed a medical source statement as to Holley's physical ability to work. Tr. 452-56. He indicated that he treated Holley about every six months for over 20 years. Tr. 452. Dr. Witte diagnosed Holley with sciatica, morbid obesity, type II diabetes, and an ankle sprain and noted that her symptoms included right ankle pain and lower back pain that radiates to the right leg. *Id.* Dr. Witte further indicated that Holley had mild to moderate pain in her low back, right leg, and right ankle that worsened with walking and bending. *Id.* He noted that Holley's impairments have lasted or can be expected to last at least 12 months. *Id.*

Dr. Witte opined that Holley's pain and other symptoms are likely to occasionally—defined as 8 to 33% of an eight-hour workday—interfere with the attention and concentration needed to perform even simple tasks. Tr. 453. He opined that Holley can sit for at least six hours and stand and walk for about two hours and that she must be able to walk around for five minutes every hour in an eight-hour workday. Tr. 454. Dr. Witte indicated that Holley must be able to shift positions between sitting, standing, and walking at will and needs two to three unscheduled, five-minute breaks per day. *Id.* He also opined that Holley can lift and carry up to 10 pounds frequently and 20 pounds occasionally. *Id.* Dr. Witte opined that Holley cannot crouch or squat, can rarely twist, stoop, or bend, can occasionally climb ladders, and can frequently climb stairs. Tr. 455. He concluded that Holley's impairments are likely to produce "good" and "bad" days and cause her to be absent from work about one day per month. *Id.*

## C. Failure to Provide "Good Reasons"

The ALJ's decision summarized Dr. Witte's opinion and afforded it "partial weight." Tr. 18. In accordance with the regulations, the ALJ noted that "the majority of [Dr. Witte's] opinion

6

is consistent with the record" and recognized that "he is a treating doctor with professional expertise." *Id.*; *see* 20 C.F.R. §§ 416.927(c)(2), (4), (5) (noting that the ALJ will give more weight to an opinion that is consistent with the record as a whole, from a treating source, and from a specialist about medical issues related to his area of expertise).

The ALJ adopted portions of Dr. Witte's opinion into the RFC assessment, but she specifically rejected Dr. Witte's opinion that Holley must be able to sit/stand at will, will occasionally be off task during the workday, and will be absent about once per month. Tr. 18. The ALJ concluded that those limitations were inconsistent with the record, specifically with Holley's daily activities and diagnostic testing of her right ankle. *Id.*

### 1. Daily Activities

The ALJ discounted Dr. Witte's opinion that Holley must be able to sit/stand at will, will occasionally be off task during the workday, and will be absent about once per month based on her ability "to maintain personal care, prepare meals daily, shop in stores, manage money, use a computer, clean, and provide childcare." Tr. 18 (citing Tr. 187-97). It is unclear how these activities refute Dr. Witte's assessed limitations as to sitting and standing, remaining on task, and attending work without absences.

In fact, Holley's hearing testimony about her daily activities supports Dr. Witte's opinion. Holley testified that when she does the dishes, it takes her about half an hour to do one load because she has to sit down after she has been standing at the sink for about five to ten minutes. Tr. 46. She also testified that if she goes to the mall with her children, she has to sit inside the car while they go inside to shop. Tr. 47. Holley testified that she goes grocery shopping but will stop and hold onto the cart for a few minutes when she needs a break. *Id.* Without a cart or something she could use for support, she estimated she could walk for about ten minutes. Tr. 48. Holley testified

7

that her husband and children lift and carry things around the house. *Id.* She also stated that she tries to do things like sweep, mop, and dust, but that she has to stop and sit for a few minutes while doing these activities. Tr. 49. Holley testified that she "sometimes" uses her computer and has difficulty doing so because "[i]t hurts." Tr. 50.

Treatment notes throughout the record are consistent with this testimony. Treatment notes from July and August of 2014 indicate that Holley's symptoms are worse with prolonged standing or sitting, that she has pain with housework that makes her "much slower," and that she has pain after standing for 10 to 15 minutes. Tr. 401, 405, 408. At three appointments in 2016, Holley reported increased pain with walking, climbing stairs, standing, bending, and lifting. Tr. 371, 375, 379.

Contrary to the ALJ's assertion, the way that Holley performs many of her activities is consistent with Dr. Witte's opinion, especially the sit/stand limitation. Moreover, "the ability to perform basic activities of self-care . . . do not by themselves contradict allegations of disability," *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (citation and quotation marks omitted), and the Second Circuit has "stated on numerous occasions" that the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

The ALJ's finding that Holley does not need a sit/stand option and will not be off task occasionally or miss work because she can perform certain daily activities, without more, does not provide Holley or the Court with a good reason for discounting Dr. Witte's opinion. Accordingly, the Court finds that the ALJ improperly discounted Dr. Witte's opinion on this basis.

### 2. Right Ankle MRI

The ALJ also discounted Dr. Witte's opinion that Holley must be able to sit/stand at will, will occasionally be off task during the workday, and will be absent about once per month based on "diagnostic testing of the right ankle, which is only consistent with a sprain." Tr. 189 (citing Tr. 449).

Without additional explanation, it is unclear how Holley's right ankle MRI contradicts Dr. Witte's assessed limitations as to sitting and standing, remaining on task, and absences from work. Although the ALJ characterizes Holley's MRI as revealing only a "sprain," the report contains several other findings and impressions that are difficult for the Court—and the ALJ—to interpret without assistance from a medical source. The report notes, for example, that Holley has a "[s]everely attenuated ATFL and diffusely heterogenous PTFL," "[n]onspecific distal leg and medial ankle subcutaneous edema," and a "[s]mall posterior subtalar joint effusion." Tr. 449.

"The ALJ's own interpretation of raw medical data does not justify rejecting a treating physician's opinion," *Jackson v. Comm'r of Soc. Sec.*, No. 17-CV-6252-FPG, 2018 WL 4346593, at *7 (W.D.N.Y. Sept. 12, 2018) (citation omitted), and the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (citations omitted). *See also Smith v. Colvin*, 218 F. Supp. 3d 168, 174 (E.D.N.Y. 2016) (the ALJ improperly "relied on his own lay critique of the record evidence" when he rejected the treating physician's opinion). Accordingly, the Court finds that the ALJ improperly discounted Dr. Witte's opinion on this basis.

For all the reasons stated, the Court finds that the ALJ violated the treating physician rule when he failed to give good reasons for discounting Dr. Witte's opinion.

### D. Remand for Calculation of Benefits

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

Dr. Witte treated Holley on numerous occasions for 20 years and Holley testified that he knows her well. Tr. 52-53. Thus, under the treating physician rule, Dr. Witte's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106.

The Court finds that Dr. Witte's opinion is well-supported. In his medical source statement, Dr. Witte indicated that he based his opinion on Holley's tender right lumbar muscles, mild positive right leg raise tests, and pain with right ankle motion, and the relevant treatment notes contain these findings. Tr. 452; *see, e.g.*, Tr. 401-02, 405, 407-08, 425, 441. Dr. Witte also consistently assessed Holley with low back pain, sciatica, and morbid obesity, which aligns with

10

his assessed sitting, standing, walking, and postural limitations and opinion that Holley will need regular breaks. *See, e.g.*, Tr. 384, 390, 394, 402, 404, 406, 408, 412, 417, 425, 437, 441.

The Court also finds that Dr. Witte's opinion is not inconsistent with other substantial record evidence. Consultative examiner Carolyn Ling, M.D. provided the only other medical opinion as to Holley's ability to work. Tr. 347-50. After performing a one-time examination, Dr. Ling merely opined that Holley has "mild limitation" handling objects with her right hand. Tr. 350. This does not contradict Dr. Witte's detail assessment and, even if it did, a treating physician's opinion "is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (citations omitted); *see also* 20 C.F.R. § 416.927(c)(2). Rather, a consultative examiner's opinion is generally entitled to "little weight," because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Hamm*, 2017 WL 1322203, at *17 (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) and *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)).

Treatment notes from other sources also support Dr. Witte's opinion. Chirag R. Patel, M.D. indicated that Holley had increased pain with walking, climbing stairs, standing, bending, and lifting, found her to have lumbar spine tenderness and limited flexion, and recommended a right sacroiliac joint injection. Tr. 351-53, 356, 359-60, 371-72, 375-76, 379-80. Podiatrist Jean Archer-Coleila treated Holley for right foot and ankle pain and indicated that she had weakness walking and increased pain with standing. Tr. 363, 446, 468, 471. Dr. Archer-Coleila also reported that Holley's right ankle was tender and had a limited range of motion secondary to pain,

11

and that she walked with an antalgic gait or could bear weight but it was painful. Tr. 364, 447, 469, 472.

For the reasons stated, Dr. Witte's opinion is entitled to controlling weight and the Court remands this matter for benefits because that opinion establishes that Holley is disabled. At Holley's hearing, her attorney asked the VE to assume a hypothetical individual who had all of the limitations that Dr. Witte assessed. Tr. 62-63. The VE testified that there would be no jobs available in the national economy that such an individual could perform. Tr. 63. Specifically, the VE indicated that the combination of limitations, especially the occasional inability to sustain simple work tasks and processes and the necessity to sit/stand at will, would preclude employment. *Id.* Thus, additional proceedings would serve no purpose and would only further delay Holley's claim, which has been pending for over four years. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner solely for the calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 31, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court